Exhibit A

To The

Notice of Removal

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
03/27/2023
Chad Finke, Executive Officer / Clerk of the Court
By: _____ E. Jefferson _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

TESLA, INC. d.b.a. TESLA MOTORS, INC., a Corporation; JOHN DOE 1; JOHN DOE 2; and DOES 3 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ASHLEY PERKINS

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br><br> Alameda County Superior Court, 24405 Amador Street, Hayward, CA 94544 | **CASE NUMBER:** <br> *(Número del Caso):* <br> **23CV030018** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Genie Harrison, Esq., Genie Harrison Law Firm, 523 W. 6th Street, Suite 707, Los Angeles, CA 90014, (213) 805-5301

DATE: 03/27/2023 Chad Finke, Executive Officer / Clerk of the Court    Clerk, by _____ E. Jefferson _____, Deputy
*(Fecha)*                                                              *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: **TESLA, INC. D.B.A. TESLA MOTORS, INC., A CORPORATION**
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

1  Genie Harrison, SBN 163641
   Mia Munro, SBN 281317
2  GENIE HARRISON LAW FIRM, APC
   523 W. 6th Street, Suite 707
3  Los Angeles, CA. 90014
   Telephone No.: (213) 805-5301
4  Facsimile No.: (213) 805-5306
   genie@genieharrisonlaw.com
5  mia@genieharrisonlaw.com
6
   Kipp Mueller SBN 299984
7  BRENT & FIOL, LLP
   117 E. Colorado Blvd., Suite 465
8  Pasadena, CA 91105
   Telephone:    (626) 240-4850
9  Facsimile:    (415) 373-4420
   kmueller@brentfiol.com
10
11 Attorneys for Plaintiff ASHLEY PERKINS

12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              IN AND FOR THE COUNTY OF ALAMEDA

15 ASHLEY PERKINS,                         CASE NO.:  23CV030018

16            Plaintiff,

17    vs.                                   COMPLAINT FOR DAMAGES FOR
                                            VIOLATION OF:
18 TESLA, INC. d.b.a. TESLA MOTORS, INC.,
   a Corporation; JOHN DOE 1; JOHN DOE 2;     1.  Sexual Harassment in Violation of
19 and DOES 3 through 20, inclusive,              FEHA;
                                               2.  Sex Discrimination in Violation of
20            Defendants.                           FEHA;
                                               3.  Failure to Accommodate Pregnancy-
21                                                 Related Condition in Violation of
                                                   FEHA;
22                                             4.  Retaliation in Violation of FEHA;
                                               5.  Failure to Prevent and/or Remedy
23                                                 Sexual Harassment, Discrimination,
                                                   and Failure to Accommodate in
24                                                 Violation of FEHA;
                                               6.  Failure to Provide Lactation
25                                                 Accommodation in Violation of Labor
                                                   Code Sections 1030-1031;
26                                             7.  Wrongful Constructive Termination in
                                                   Violation of Public Policy; and
27                                             8.  Violation of Unfair Competition Law.

28
                                        1
                                    COMPLAINT

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
03/27/2023 at 12:23:47 PM
By: Elaine Jefferson,
Deputy Clerk

Plaintiff ASHLEY PERKINS alleges as follows:

## THE PARTIES

1.     Plaintiff ASHLEY PERKINS ("Plaintiff" or "Ms. Perkins") is, and at all times herein mentioned was, a resident of the County of Sacramento, State of California. At all material times alleged herein, Plaintiff was an employee within the meaning of California Government Code §§ 12940 et seq., which obligates employers to provide a work environment free from harassment and retaliation and to take all reasonable steps necessary to prevent harassment and retaliation from occurring.

2.     At all times relevant herein, Defendant TESLA, INC. d.b.a. TESLA MOTORS, INC. ("Tesla") is, and at all times relevant hereto was, a Texas corporation, whose principal place of business is located at 1 Tesla Road, Austin, TX 78725. It is, and at all times herein relevant was, a corporation that has regularly done, and is continually and systematically doing business in the County of Alameda, State of California. Defendant Tesla was Plaintiff's employer and at all material times an employer within the meaning of California Government Code §§ 12926(d) and 12940(j)(4)(A) and, as such, is barred from harassing or discriminating against employees, as set forth in Government Code §12940, et seq.

3.     At all times relevant herein, Defendant JOHN DOE 1 is, and at all times relevant hereto was, an individual who resides in California and is presumed to reside in the County of Alameda. Defendant JOHN DOE 1 was employed by Defendant Tesla at the time of the incident that is the subject of this complaint.

4.     At all times relevant herein, Defendant JOHN DOE 2 is, and at all times relevant hereto was, an individual who resides in California and is presumed to reside in the County of Alameda. Defendant JOHN DOE 2 was employed by Defendant Tesla at the time of the incident that is the subject of this complaint.

5.     The true names and capacities, whether individual, plural, corporate, associate, or otherwise of Defendants Does 3 through 20, inclusive, are unknown to Plaintiff, who therefore sue

said defendants by such fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the acts and occurrences herein alleged, and that plaintiff's damages were caused by such defendants.

6.     Plaintiff is informed and believes, and on that basis alleges, at all times herein mentioned, each defendant was the agent and employee of the other defendants in the commission of the acts herein alleged, and was acting in the course and scope of his/her/its authority as such agent and employee and with the permission and consent of all defendants.

7.     Plaintiff is informed and believes, and on that basis alleges, at all relevant times, each defendant conspired with, agreed to, ratified, approved, and furthered the other defendants to commit the breach of duties and/or torts alleged herein. Each defendant knew that the other defendants' conduct constituted breach of duties and/or torts, and gave substantial assistance and/or encouragement to the other defendants to commit the breach of duties and/or torts alleged herein.

8.     Plaintiff is informed and believes, and on that basis alleges, at all relevant times, each defendant designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings herein after referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the described injuries and damages to Plaintiff. Plaintiff will hereafter amend this Complaint to show the defendants' true names and capacities after the same have been ascertained.

9.     At all relevant times, each defendant aided and abetted the other defendants in committing the breach of duties and torts alleged herein. Each defendant knew that the other defendants' conduct constituted breaches of duties and/or torts, and each defendant gave substantial assistance and/or encouragement to the other defendants to commit the breaches and/or torts alleged herein.

10.     At all relevant times, each defendant entered into a joint enterprise with the other defendants. Each defendant had an equal voice in controlling and directing the enterprise that

1   resulted in the breach of duties to plaintiff and/or the torts alleged herein.

2         11.    Whenever reference is made in this complaint to any act of defendants, such

3   allegation shall mean that each defendant acted individually and jointly with the other defendants.

4         12.    Within the time provided by law, Plaintiff filed charges with the Department of

5   Fair Employment and Housing ("DFEH"). Ms. Perkins filed her DFEH complaint and received a

6   right to sue letter from the DFEH on March 24, 2023. Ms. Perkins has exhausted her

7   administrative remedies.

8

### VENUE

9

10         13.    Venue in this action is proper in Alameda County based upon the fact that the

11   causes of action arose where Plaintiff worked, which included Tesla's facility located at 901 Page

12   Ave, Fremont, CA 94538.

13

### COMMON ALLEGATIONS FOR ALL CAUSES OF ACTION

14

15         14.    Ms. Perkins began her employment with Tesla on or around April 11, 2022. For her

16   first three days on the job, Ms. Perkins attended an orientation and training program in order to

17   learn how to perform her role as a Materials Handler.

18         15.    On the first day of her employment, Ms. Perkins informed her trainer that she had

19   an infant son and that she needed to periodically pump breast milk. She asked her trainer for

20   accommodation. Her trainer sent her to a storage room that did not have any locks and had a single

21   chair. There was no sink to clean or refrigerator to store milk. The room operated in clear violation

22   of California Labor Code sections 1031(b) and (d), which require that a lactation room be "free

23   from intrusion" (subsection (b)) and contain "a sink with running water and a refrigerator suitable

24   for storing milk," respectively. Nevertheless, Ms. Perkins expressed milk in this room for the three

25   days while undergoing her training.

26         16.    On April 13, 2022, Ms. Perkins completed her orientation and training and was

27   assigned to work at 901 Page Avenue, Fremont, California 94538. She was not given any

28

COMPLAINT

information about how she would be accommodated for her pumping at the location.

17.     On April 14, 2022, Ms. Perkins arrived before her shift so that she could pump milk before her shift started. Upon arriving, Ms. Perkins asked a female security employee where the lactation room was. The security employee was unsure and called her supervisor. The security employee then told Ms. Perkins that the lactation room was somewhere on the second floor next to the conference rooms.

18.     Ms. Perkins checked in with her supervisors and let them know of her need for accommodation. First, she spoke with one supervisor who asked, "What's pumping?" Ms. Perkins responded, "Pumping milk." The supervisor had not been informed by Tesla that Ms. Perkins needed accommodation. The supervisor told her that the room where she could express milk was somewhere in the front of the building and gave no further directions. He then instructed her to tell her Team Lead named Joel (last name unknown) when she needed to express milk.

19.     Ms. Perkins then went to Joel and informed him that she needed accommodation to express her milk promptly. Joel was not pleased with the request and said with hostility to Ms. Perkins something to the effect of, "Are you trying to take advantage of women's rights and start a movement in the warehouse?" Ms. Perkins was stunned. Joel did not know where the lactation room was and dismissively told Ms. Perkins to ask someone else for directions.

20.     Ms. Perkins' supervisors failed to make any efforts to assist or accommodate her and made clear that they were not interested in accommodating her. Ms. Perkins was left in the lurch, knowing that her supervisors were hostile to her need for accommodation.

21.     Ms. Perkins began wandering alone in search of the lactation room. She was feeling pain and needed to express milk quickly. Further, she wanted to work her shifts – both in order to minimize inconvenience for her team (especially on her first day) and because she needed to earn wages.

22.     Eventually, desperate for an answer and devoid of any help or direction from her supervisors, Ms. Perkins saw a random female employee and pled for her to help. The female employee obliged. For close to an hour, the two of them walked around the warehouse in search of

the room where Ms. Perkins could pump milk. They followed the instructions of the security officer and the supervisor by walking to the front of the building. They went to the second floor by the conference rooms. However, they did not see a room designated for pumping anywhere.

23.     Ms. Perkins became concerned that she was missing her first shift and that she needed to express milk quickly. Finally, the woman she was with and other people by the conference rooms told Ms. Perkins to use a room that was in the vicinity of where she was vaguely directed to go by her supervisors.

24.     Similar to the prior room, this room was not compliant with the Labor Code. It did not have a lock, nor did it have a sink. However, being left without a choice and without any assistance or accommodation from Tesla, Ms. Perkins used the room to pump.

25.     On April 15, 2022, Ms. Perkins arrived at around 4:30 PM for her second day of work, approximately an hour before her shift began. She did so in order to pump milk before the beginning of her shift so as to minimize her need for breaks. She used the same room.

26.     Approximately two hours later, Ms. Perkins again needed to pump milk. Ms. Perkins therefore went back to the room to pump. Approximately five minutes into pumping, an unknown individual (herein "John Doe 1") reached for the door handle. Ms. Perkins could see his silhouette through the frosted glass door. She panicked and quickly shouted "someone is in here!" John Doe 1 stopped his reach for the door and walked away.

27.     Another minute or two later, an individual (unclear if it was John Doe 1 or John Doe 2) walked towards the door and reached for the door handle. Again, Ms. Perkins yelled, "someone's in here!" The individual sounded as though he was on his phone. He hung up and walked away from the door.

28.     Another minute or two later, two individuals walked towards the door together. Ms. Perkins again said, "Someone's in here. I will be out in a few minutes!" The two individuals – John Doe 1 and John Doe 2 - entered the room. Both looked at her exposed chest. After five to ten seconds, John Doe 1 exited the room. However, John Doe 2 stood in the doorway, staring directly at Ms. Perkins and looking down at her chest while eating a slice of pizza. He said to Ms. Perkins,

"I'm not going anywhere." Ms. Perkins explained that she could not stop pumping and asked that he leave immediately.

29.     John Doe 2 could have waited outside of the room for a few minutes or used the available rooms next door. Instead, John Doe 2 insisted on staying in the room while staring at Ms. Perkins' chest in a degrading manner.

30.     For an agonizing five to six minutes, John Doe 2 stood over Ms. Perkins and stared at her face and her chest with a smirk on his face. Ms. Perkins felt disgusted, humiliated, and violated. Through his smirks and gaze, he expressed to Ms. Perkins that he was enjoying seeing her exposed, and that he was enjoying his power over her, his ability to intimidate her in the situation, and how helpless the situation had left her.

31.     Ms. Perkins completed her pumping as quickly as she could, packed up her belongings, and frantically left the room. She felt stunned and deeply violated by what had occurred. In a panic, she went immediately to her supervisors in search for protection.

32.     Ms. Perkins first went to the cafeteria area, knowing that her team was on break. She saw Joel and told him she needed to speak with him or another supervisor right away. In front of their team and others in the cafeteria, Joel asked, "What is this about?" Ms. Perkins, humiliated, did not want to discuss what happened in front of others. Unfortunately, Joel refused to speak with her privately. Feeling an urgent need to inform her supervisor that she felt unsafe, Ms. Perkins told Joel what happened.

33.     Ms. Perkins then reported to a security officer what had happened. The security officer tried to call the Human Resources department to handle the situation. But after making numerous calls, he said no one from Human Resources was picking up their phones.

34.     The security officer then asked Ms. Perkins to walk around the warehouse with him and point out John Doe 1 and John Doe 2. At first, Ms. Perkins told him that she was too traumatized and did not want to see them again. However, after further discussion, she reluctantly agreed.

35.     The security officer and Ms. Perkins found both John Doe 1 and John Doe 2. When

7

COMPLAINT

1   she was looking at John Doe 2 with the security officer, John Doe 2 smirked in the same way he

2   was in the room where the incident occurred, and said, "What's up?" in a suggestive manner.

3        36.    When the security officer and Ms. Perkins returned to the security area, the security

4   officer told Ms. Perkins that he did not know whether Tesla could discipline the employees

5   because apparently the room where Ms. Perkins was directed to pump was also the room that

6   Tesla directed employees to go to pray.

7        37.    Ms. Perkins, feeling unsafe and unprotected and traumatized, had to leave work

8   early that day.

9        38.    Approximately the next day, Ms. Perkins reported what had happened to the

10   Human Resources department.

11        39.    Traumatized by her experience and feeling unsafe and unprotected at work, Ms.

12   Perkins could not stomach returning to work without hearing back from Tesla's Human Resources

13   department and getting assurance from Tesla on what it would do to ensure that she would be safe

14   in the workplace. Ms. Perkins therefore did not return to work on the following Monday through

15   Wednesday, while waiting to hear back from Tesla's Human Resources ("HR") department. At

16   around 4 PM on Wednesday, an HR employee named Hannah (last name unknown) called Ms.

17   Perkins, told Ms. Perkins that Tesla would conduct an investigation and told her that her

18   employment would be terminated if she did not return to work the next day. Ms. Perkins expressed

19   that she felt unsafe and asked if the harassers were still in the facility. Hannah told Ms. Perkins

20   dismissively that she was not permitted to discuss the harassers with Ms. Perkins and that "they

21   have rights too." Ms. Perkins asked if she would be compensated for her missed days. Hannah

22   responded, "No. It's your fault you missed work." Hannah did not provide any information about

23   how Tesla intended to address what had happened, did not assure Ms. Perkins that she would be

24   safe at work, did not advise Ms. Perkins about her right to be free from sexual harassment or

25   assault in the workplace, and did not advise Ms. Perkins about her right to lactation

26   accommodation in the workplace

27        40.    Needing a job in order to provide for herself and her children, Ms. Perkins

28

8
COMPLAINT

1    reluctantly agreed to return to work.

2        41.    When Ms. Perkins returned to work, her coworkers knew about what had

3    happened. Ms. Perkins felt humiliated and isolated.

4        42.    When Ms. Perkins returned to work, her supervisor said in a hostile manner, "What

5    happened was your fault. You should have known where you were going." He then told her that he

6    did not want to get into any trouble or to get Team Lead Joel into trouble because of what had

7    happened and threatened ominously, "You need to be careful about what you do here."

8        43.    Ms. Perkins was then directed to another room where she could pump milk. But the

9    code to the door that she was given did not work. On the door, a note said to email security if one

10   was having issues opening the door. When Ms. Perkins emailed the address on the note, it was not

11   a functioning email address. That entire shift, Ms. Perkins did not pump, causing serious pain and

12   impacting her ability to produce milk in the future.

13       44.    Eventually Ms. Perkins was given the correct code to the lactation room. But by

14   this point, Tesla made clear that it was hostile to her need for lactation accommodation and would

15   use any need for such accommodation against her. When Ms. Perkins told Joel she needed to

16   pump, Joel would make hostile and retaliatory comments such as "Do you really have to?", "I feel

17   like you're taking advantage of women's rights," and "This is exactly why I didn't want someone

18   like you on the line." Joel also threatened Ms. Perkins that if she took too long on her breaks it

19   would count against her in being permanently hired by Tesla. He also became stand-offish and

20   refused to help Ms. Perkins when she asked questions about her work.

21       45.    Rather than potentially facing further harassment or anger from her supervisors,

22   Ms. Perkins stopped pumping while at work. As a result, her body began producing less milk for

23   her son and she experienced serious pain during her shifts.

24       46.    Ms. Perkins waited for a few weeks, hoping to hear about the results of the Human

25   Resources investigation and actions that Tesla would take to keep Ms. Perkins safe. But after a

26   few weeks passed without any follow up from Tesla, Ms. Perkins realized that Tesla did not intend

27   to follow up with her or to provide her any assurances that she would be safe or that Tesla would

28
                                              9
                                          COMPLAINT

1    protect her from sexual harassment including from John Doe 1, John Doe 2 or other employees.

2    Ms. Perkins realized that she was not safe from sexual harassment or retaliation at Tesla, and that

3    it would continue to retaliate against her should she want to pump milk to keep her baby healthy.

4         47.    On May 28, 2022, Ms. Perkins told Hannah from Human Resources that she did

5    not feel safe returning to work and that she felt she had no choice but to resign because of the

6    harassment she had endured with no action by Tesla to keep her safe. Hannah did not offer any

7    accommodation or express any intent to remedy the harassment that Ms. Perkins had endured.

8         48.    When Ms. Perkins stopped working for Tesla, Ms. Perkins was able to increase her

9    milk supply to keep her baby healthy. But eventually, in need of an income to support her family,

10   Ms. Perkins decided to reapply for another position at Tesla, hoping she would be placed at a new

11   location away from the supervisors and John Doe 1 and John Doe 2, and with accommodation

12   enabling her to pump at a new location.

13        49.    Ms. Perkins re-applied for a position at Tesla in July of 2022 and began work on

14   August 22, 2022, at a different location. When she reported to her new location, she saw that the

15   lactation room was also a prayer room, again in violation of the Labor Code. This felt like a slap in

16   the face for Ms. Perkins.

17        50.    The new Tesla location's failure to provide reasonable lactation accommodation,

18   even after all that had happened, triggered the trauma from Ms. Perkins' last experience working

19   for Tesla. She knew that she was unprotected, that Tesla would never accommodate her need to

20   pump milk, and that Tesla would not protect her from further sexual harassment.

21        51.    Ms. Perkins, knowing she would not be safe pumping in the newly assigned

22   facility, but in need of an income to support her family, tried to work without pumping at all while

23   at work. This again caused her extreme pain and diminished her ability to produce milk for her

24   baby. After attempting to work without the accommodation for a couple of weeks and losing the

25   ability to produce milk to keep her baby healthy, and concerned for the health of her baby, Ms.

26   Perkins, defeated, was again forced to leave her employment at Tesla.

27        52.    On or around September 12, 2022, Ms. Perkins resigned. She advised Tesla that the

28
                                         10
                                      COMPLAINT

reasons she felt forced to resign were because she did not feel safe in the workplace, because Tesla did nothing to protect her after multiple employees sexually harassed her, and because Tesla had failed to accommodate her need to pump breast milk, causing a decrease in her milk supply. Upon receiving notice of Ms. Perkins' resignation, Tesla did nothing to assure Ms. Perkins that she would be accommodated or safe in the workplace and instead let her leave.

### FIRST CAUSE OF ACTION

### SEXUAL HARASSMENT

### (Against All Defendants)

53.     Plaintiff incorporates by reference all the previously set forth allegations as if fully set forth herein.

54.     As articulated more fully above, Plaintiff was subjected to sexual harassment and harassment based on sex or gender.

55.     Government Code section 12926(r)(1)(C) defines "sex" to include "Breastfeeding or medical conditions related to breastfeeding."

56.     Government Code section 12940(j)(1) states that it is unlawful for an employer to harass an employee because of sex and that, "Harassment of an employee . . . shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."

57.     An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

58.     The unwanted comments, inquiries, and hostile, offensive, intimidating work environment conducted, created, aided, abetted, incited, or compelled by Defendants as alleged above, violate Government Code section 12940(j)(1) within the meaning of Government Code section 12923. The harassing conduct engaged in by Defendants was severe and/or pervasive.

COMPLAINT

Further, a reasonable individual in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

59.     The actions of Defendants violated Government Code section 12940(j), and created a hostile, offensive, oppressive, and/or intimidating work environment. This work environment disrupted Plaintiff's emotional tranquility in the workplace, affected her ability to perform her job, and interfered with and undermined her personal sense of well-being, amounting to harassment, including but not limited to forms of harassment as described in Government Code section 12923.

60.     As described above, Tesla and/or its agents and employees engaged in the harassing conduct and/or knew or should have known of the harassing conduct and failed to take either immediate or appropriate corrective action, and additionally ratified the harassing conduct.

61.     Defendants' conduct was a substantial factor in causing harm to Plaintiff, including but not limited to: pain and suffering, physical injuries, mental anguish, and emotional distress. As such, Plaintiff is entitled to general and compensatory damages in amounts to be proven at the time of trial.

62.     Plaintiff is also entitled to declaratory relief regarding Defendants' violation of the law.

63.     Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and costs pursuant to Government Code § 12965(b).

64.     The conduct of Defendants and each of them including DOES 1 through 20 and/or their agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other. Consequently, plaintiff is entitled to punitive damages according to proof at the time of trial.

COMPLAINT

## SECOND CAUSE OF ACTION

### SEX DISCRIMINATION IN VIOLATION OF FEHA

### (Against Tesla and DOES 3-20)

65.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

66.     Government Code section 12926(r)(1)(C) defines "sex" to include "Breastfeeding or medical conditions related to breastfeeding." Government Code section 12926(r)(2) states in relevant part that "'Gender' means sex[.]"

67.     At all times herein mentioned, California Government Code section 12940 et seq. was in full force and effect and were binding on Defendants and each of them, as each Defendant regularly employed five (5) or more persons.

68.     Plaintiff was at all times material hereto an employee covered by California Government Code section 12940(a) prohibiting discrimination in employment on the basis of sex or gender.  Defendants were at all relevant times employers within the meaning of California Government Code section 12926(c), and, as such, are barred from discriminating in employment decisions on the basis of sex or gender as set forth in California Government Code section 12940. Plaintiff is a female who had medical conditions related to breastfeeding at all relevant times.

69.     Defendants willfully and intentionally engaged in a course of conduct designed to discriminate against Plaintiff by, among other things, failing to accommodate her need to pump breast milk, creating a hostile work environment for her because of her sex and gender and need to pump breast milk, and condoning sexual harassment and harassment based on sex and gender. By their conduct, Defendants made Plaintiff's submission to a sexually hostile work environment a condition of her employment. The totality of the circumstances amounted to constructive discharge based on and because of her sex and/or gender.

70.     Plaintiff is informed and believes, and on that basis alleges, that her gender was a substantial and determining factor in Defendants' termination of Plaintiff's employment, and that

Defendants' conduct as alleged constitutes an unlawful employment practice in violation of Government Code sections 12940 et seq.

71.     As a proximate result of Defendants' wrongful conduct, Plaintiff has sustained substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

72.     As a further proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer humiliation, embarrassment, discomfort, and emotional distress and mental anguish, all to her damage in an amount according to proof at the time of trial.

73.     Plaintiff is also entitled to declaratory relief regarding Defendants' violation of the law.

74.     In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in the conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages in an amount according to proof at the time of trial, and reasonable attorneys' fees and costs pursuant to California Government Code section 12965(b).

## THIRD CAUSE OF ACTION

### FAILURE TO PROVIDE REASONABLE ACCOMMODATION FOR PREGNANCY-RELATED CONDITION IN VIOLATION OF FEHA

**(Against Tesla, Inc. and DOES 3-20)**

75.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76.     California Government Code section 12945 requires all employers covered by the FEHA to provide a reasonable accommodation to employees affected by pregnancy, childbirth, or a related medical condition. Section 12945 also requires all employers covered by the FEHA to engage in a good faith interactive process to identify a reasonable accommodation for employees affected by pregnancy, childbirth, or a related medical condition.

77. It is an unlawful employment practice for an employer covered by the FEHA to interfere with the exercise, or the attempt to exercise, any rights under section 12945 of the California Government Code. In addition, employers may not discharge, discriminate or retaliate against any person for exercising the right to accommodation under the FEHA.

78. At all relevant times, Plaintiff's medical conditions related to pregnancy and childbirth required her to periodically pump breast milk in a private and safe space.

79. Plaintiffs' need for accommodation for her medical condition related to pregnancy and childbirth was made known to Defendant on her first day of work. Plaintiff requested reasonable accommodation by way of breaks and a lactation room to pump breast milk.

80. Defendants repeatedly failed to provide Plaintiff with reasonable accommodation. Plaintiff's supervisors belittled her for seeking accommodation and refused to inform her of the whereabouts of a room where she could privately and safely express milk thereby interfering with her right to a reasonable accommodation. As a foreseeable result of failing to accommodate her, Plaintiff endured sexual harassment by coworkers.

81. In August of 2022, Plaintiff returned and attempted to work for Defendants once more at an entirely new location. But again, Defendants failed to provide her with a private and safe space in which she could express milk. This was precisely the same failed accommodation that led to the horrific experience she endured at the previous location.

82. Defendants' repeated failure to accommodate Ms. Perkins' need to pump breast milk amounted to constructive discharge.

83. Defendants failed to provide reasonable accommodation for Plaintiff's known disability in violation of Government Code Section 12940(m).

84. Defendants' failure to provide reasonable accommodation for Plaintiff was a substantial factor in causing her harm.

85. As a proximate result of Defendants' willful, knowing, and intentional violation(s) of FEHA, Plaintiff has sustained and continues to sustain losses in earnings and other employment benefits.

86.     As a proximate result of Defendants' willful, knowing, and intentional violation(s) of FEHA, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental pain and anguish, in a sum according to proof.

87.     Plaintiff is also entitled to declaratory relief regarding Defendants' violation of the law.

88.     Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees, and is entitled to an aware of attorneys' fees and costs pursuant to Government Code § 12965(b).

89.     The conduct of Defendants and each of them including DOES 1 through 20 and/or their agents/employees as described herein was malicious, fraudulent, and/or oppressive, and was done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said Defendants according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF FEHA

### (Against Tesla, Inc. and DOES 3-20)

90.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

91.     As articulated more fully above, Plaintiff engaged in protected activities, including but not limited to reporting sexual harassment, seeking reasonable accommodation for her pregnancy-related medical condition, and reporting the failure to provide her with reasonable accommodation for her pregnancy-related medical condition.

92.     As alleged above, Plaintiff is informed and believes that her protected activity was a substantial motivating factor for Defendants' interference with Plaintiff's ability to pump milk while at work and her feelings of safety on the job, and for Defendants' threats that her job would

1    be at risk if she continued to engage in protected activities. Defendants' interference and threats

2    caused Plaintiff to stop pumping milk at work therefore losing the ability to produce milk to keep

3    her baby healthy, and her fear of unchecked sexual harassment in the workplace, resulting in her

4    constructive termination.

5         93.     Defendants' conduct was a substantial factor in causing harm to Plaintiff, including

6    but not limited to: pain and suffering, mental anguish, and emotional distress. As such, Plaintiff is

7    entitled to general and compensatory damages in amounts to be proven at the time of trial.

8         94.     Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees,

9    and is entitled to an aware of attorneys' fees and costs pursuant to Government Code § 12965(b).

10        95.     The conduct of Defendants and each of them including DOES 1 through 20 and/or

11    their agents/employees as described herein was malicious, fraudulent, and/or oppressive, and was

12    done with a willful and conscious disregard for Plaintiff's rights and for the deleterious

13    consequences of defendants' actions. Defendants and each of them, and their agents/employees or

14    supervisors, authorized, condoned and ratified the unlawful conduct of each other. Consequently,

15    Plaintiff is entitled to punitive damages against each of said Defendants according to proof at the

16    time of trial.

17

18

19

20

21

                             **FIFTH CAUSE OF ACTION**

         **FAILURE TO PREVENT SEXUAL HARASSMENT, SEX DISCRIMINATION,**

        **FAILURE TO ACCOMMODATE AND RETALIATION IN VIOLATION OF FEHA**

                    **(Against Tesla, Inc. and DOES 3-20)**

22        96.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

23    herein.

24        97.     Defendants violated California Government Code sections 12940(j) and (k), by

25    failing to take all reasonable steps necessary to prevent and/or remedy sexual harassment, sex

26    discrimination, failure to accommodate a pregnancy and childbirth related medical condition, and

27    retaliation, ultimately resulting in her constructive discharge. Defendants knew and had reason to

28

1  know that they were violating Plaintiff's right to be free from sexual harassment, sex

2  discrimination, failure to accommodate, and from retaliation and failed to take reasonable steps to

3  prevent or remedy the violations.

4       98.    Defendants' conduct was a substantial factor in causing harm to Plaintiff, including

5  but not limited to: loss of earnings and other employment benefits, physical injuries, pain and

6  suffering, mental anguish, and emotional distress. As such, Plaintiff is entitled to general and

7  compensatory damages in amounts to be proven at the time of trial.

8       99.    Plaintiff is also entitled to declaratory relief regarding Defendants' violation of the

9  law.

10       100.    Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees,

11  and is entitled to an award of attorneys' fees and costs pursuant to Government Code §12965(b).

12       101.    The conduct of Defendants and each of them including DOES 1 through 20 and/or

13  their agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done

14  with a willful and conscious disregard for plaintiff's rights and for the deleterious consequences of

15  defendants' actions. Defendants and each of them, and their agents/employees or supervisors,

16  authorized, condoned and ratified the unlawful conduct of each other. Consequently, plaintiff is

17  entitled to punitive damages according to proof at the time of trial.

18  **SIXTH CAUSE OF ACTION**

19  **FAILURE TO PROVIDE LACTATION ACCOMMODATION IN VIOLATION OF LABOR**

20  **CODE SECTIONS 1030-1031**

21  **(Against Tesla, Inc. and DOES 3-20)**

22       102.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

23  herein.

24       103.    Labor Code section 1030 requires employers to provide a "reasonable amount of

25  break time to accommodate an employee desiring to express breast milk for the employee's infant

26  child each time the employee has need to express milk."

27

28

18
COMPLAINT

104.    Labor Code section 1031 requires employers to provide a room for the employee to express milk "in private," "free from intrusion while the employee is expressing milk," and that is "safe" and "clean."

105.    Labor Code section 1031 prohibits an employer from discharging, discriminating, or retaliating against an employee for exercising or attempting to exercise their right to lactation accommodation.

106.    From the beginning to the end of Plaintiff's employment, Defendants violated sections 1030 and 1031 of the Labor Code by failing to provide Plaintiff a safe room to express milk in private, free from intrusion. Defendants also failed to provide Plaintiff a reasonable amount of break time to accommodate her, instead advising her that if she took too long to pump, it would jeopardize her ability to obtain permanent employment. Further Defendants discriminated and retaliated against Plaintiff for attempting to exercise her right to lactation accommodation by subjecting her to a sexually hostile work environment for attempting to exercise her rights and by threatening her and successfully discouraging her from continuing to attempt to obtain the lactation accommodation to which she was entitled by law.

107.    Plaintiff is entitled to premium wages for each failure by Defendants to provide her with the accommodation requested as provided by Labor Code sections 1030-1033 and 226.7 and to her reasonable attorney's fees and costs.

## SEVENTH CAUSE OF ACTION

## WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against Tesla, Inc. and DOES 3-20)

108.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

109.    The public policy of the State of California, as codified, expressed and mandated in Government Code section 12940, is to prohibit employers from discriminating against employees based on their sex or gender, from failing to provide accommodation for pregnancy-related medical conditions, and from retaliating against any employee for making complaints of sex

and/or gender discrimination and/or harassment and/or retaliation. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. Accordingly, the actions of Defendants, and each of them, in sexually harassing, discriminating, retaliating against and terminating Plaintiff on the grounds stated above was wrongful and in contravention and violation of the express public policy of the State of California.

110.    The public policy of the State of California, as codified, expressed and mandated in Labor Code section 1030, is to require employers to provide a reasonable amount of break time to accommodate an employee desiring to express breast milk for the employee's infant child each time the employee has need to express milk. The public policy of the State of California, as codified, expressed and mandated in Labor Code section 1031, provides that the employer is required to provide a room for the employee to express milk in private, free from intrusion while the employee is expressing milk, and that is safe and clean. The public policy of the State of California, as codified, expressed and mandated in Labor Code section 1031, prohibits an employer from discharging, discriminating, or retaliating against an employee for exercising or attempting to exercise their right to lactation accommodation.

111.    Plaintiff alleges that that Defendants and/or their agents/employees, were motivated to cause the termination of Plaintiff's employment on grounds that violate California public policies, including the policies reflected in the FEHA and Labor Code.

112.    By engaging in the aforementioned conduct, Defendants, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced policy of this State against such practices.

113.    Defendants' conduct was a substantial factor in causing harm to Plaintiff, including but not limited to: loss of earnings and other employment benefits, physical injuries, pain and suffering, mental anguish, and emotional distress. As such, Plaintiff is entitled to general and compensatory damages in amounts to be proven at the time of trial.

114.   Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and costs pursuant to Government Code §12965(b).

115.   The conduct of Defendants and each of them including DOES 1 through 20 and/or their agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other. Consequently, plaintiff is entitled to punitive damages according to proof at the time of trial.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW

#### (Against Tesla, Inc. and DOES 3-20)

116.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

117.   Plaintiff hereby brings a claim for Unfair Business Practices against Defendant pursuant to Business and Professions Code sections 17200, *et seq*. The conduct of Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiff and the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

118.   Business and Professions Code sections 17200, *et seq.*, prohibit unlawful and unfair business practices. Plaintiff is a "person" within the meaning of Business and Professions Code section 17204, and therefore has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable remedies.

119.   As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiff and members of the public. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiff.

120. Defendants' conduct, as alleged hereinabove, constituted unfair competition in violation of Business and Professions Code sections 17200, *et seq*.

121. Defendants' unfair business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, including but not limited to orders that the Defendants account for, disgorge, and restore to Plaintiff the minimum wage, overtime compensation, and other monies and benefits unlawfully withheld from her.

122. Plaintiff further seeks attorneys' fees pursuant to Code of Civil Procedure section 1021.5.

///

///

///

22
COMPLAINT

1

## **PRAYER FOR RELIEF**

2

3        WHEREFORE, Plaintiffs pray for a judgment against all Defendants, including Does 3 to

4    20, and each of them, as follows:

5            a.      For general and special damages, past and future, according to proof at trial;

6            b.      For lost earnings and earning capacity, past and future, according to proof;

7            c.      For premiums under Labor Code section 226.7;

8            d.      For injunctive and declaratory relief as deemed appropriate by the Court;

9            e.      For restitution of all monies due to Plaintiff from the unlawful business practices of

10   Defendants;

11           f.      For expert fees;

12           g.      For statutory penalties;

13           h.      For interest, including pre and post judgment interest, at the maximum legal rate;

14           i.      For reasonable attorneys' fees and costs as allowed by law;

15           j.      For exemplary and/or punitive damages; and,

16           k.      For such other and further relief as the Court may deem just and proper.

17

18   Respectfully Submitted,

19   DATED:  March 27, 2023              BRENT & FIOL, LLP.

20                                                   /s/ Kipp Mueller
                                            By: _____
21                                                   Kipp Mueller
22                                                   Attorney for Plaintiff ASHLEY PERKINS

23   DATED:  March 27, 2023              GENIE HARRISON LAW FIRM, APC

24
                                            By: _____
25                                                   Genie Harrison
                                                     Mia Munro
26                                                   Attorneys for Plaintiff ASHLEY PERKINS

27

28
                                            23
                                         COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff ASHLEY PERKINS hereby demands a jury trial in this matter.

DATED:  March 27, 2023                    BRENT & FIOL, LLP.

                                          /s/ Kipp Mueller
                                          By: _____
                                          Kipp Mueller
                                          Attorney for ASHLEY PERKINS


DATED:  March 27, 2023                    GENIE HARRISON LAW FIRM, APC

                                          By: _____
                                          Genie Harrison
                                          Mia Munro
                                          Attorneys for Plaintiff ASHLEY PERKINS

24
COMPLAINT